Good morning. Good morning, your honors, and aloha. Stephen Geschel for the plaintiffs, Moore and Millennium II. This case involves a conversion of my client's property by Young Brothers on December 22, 2004. Mr. Geschel, may I ask you a question on that? Because that kind of is the bottom line. I'm having a little trouble understanding what your complaint exactly alleges. I know at your current position that this case is a conversion and a conversion only. And that puts us down one path of analysis. That goes down the tort line and executive jet or whatever the name of it was. But your complaint alleges that Young transported the goods to the Big Island of Hawaii but then did not deliver them to the plaintiffs in Hilo as the parties agreed. The defendant, as issuer and carrier, issued a bill of lading for the goods that were transported from Honolulu to Hilo and back to Honolulu. And a copy of that, or at least one page of it, is attached. So my question is, it may well be that you have a conversion claim, that you have a claim for violating the Uniform Commercial Code, whatever kind of a claim that is, in Hawaii. But don't you also have a claim for breach of the agreement to deliver goods? I don't think so. Okay. And why not? Because the goods actually were delivered to Hilo. So that, according to COGSA, that ends the... I just read the complaint. I mean, you say the defendant, this is paragraph 6, the defendant transported the goods to Hawaii but did not deliver them to the plaintiffs in Hilo as the parties agreed. Right. In order to answer that question, you have to look to the bill of lading, right, to see what the deal was. That's correct.  Yeah, okay. So why, if that's true, if you have to sort of look to the bill of lading to see what the deal was between the shipper and the carrier, and it's over water, and the claim is they didn't do what they were supposed to do, how come the Harder Act doesn't apply and give a base for federal jurisdiction? Well, first off, it's intrastate. Yeah, so the Harder Act applies, right? I would say. And probably also the, I found out last night in getting ready for this, I think there's another act that applies. Oh, great. Let's get this thing even more confused. Well, I didn't see it until last night, and I think it's called the, I'll probably get it wrong. It's 49 U.S. Code section 80102 at sake, and they call that the Palmieri. I think it's, I probably got it wrong. It was cited in the Underwood case. Okay, well. Anyway, so this is. If the Harder Act applies, then how come there's not federal jurisdiction? Oh, now we're on the jurisdictional front. Well, that is the problem. First, I said this is a conversion case. Yeah. Because the conversion occurred here in Honolulu when the ship, when the carrier gave away Sherrod Moore's goods and M2, or Millennium 2's golf sets, just gave them away. So that's conversion. And that's, it was pled in the complaint. That's when the cause of action started. That's when the damage occurred. It wasn't out on the high seas. It wasn't when the ship went down. It occurred when the goods were given away here in Honolulu. That's the conversion. Well, you could equally well argue that the damage occurred when the plaintiff didn't pick the stuff up when he was supposed to under the bill of lading. That's what started the problem. I mean, I'm just being devil's advocate here for the sake of getting you to focus on and help me through whether this really can sound in conversion as well as contract. Because it does affect the jurisdictional analysis. And I'm having a lot of trouble with this conceptually. Well, I don't know what the question is. Okay, I'm sorry. I'll give up. Did your client bring a breach of contract claim? No. Was there any breach of contract claim in the contract? Do we need to interpret the complaint as implicitly raising a breach of contract claim? I don't think so at all. Now, the UCC tort or the UCC statute, I guess 7204, seemed to potentially raise both the contract and tort issue because it talks about breach of duty of care, but also talks about contractual limitations on liability. So why isn't there a contract issue lurking in the complaint, even on just that statute? Because the contract was PAO. It was over when the goods were brought back to Honolulu and they were on the dock here. That's when Young Brothers became a warehouse person. The shipment was over. Here we say PAO. That means done. The shipment is over when delivery is taken, right? Well, now you're getting into COGSA. And Judge said COGSA doesn't apply. General kind of law. Anybody's law. State, Hawaii state law. Anybody's law. Well, the goods were never delivered to the shipper. Because he wasn't there to pick them up. Yes? The record is not clear on that. Okay? That's another genuine issue of material fact. Okay. That was never even developed. The judges said case is PAO. It's over because one year ran from October 1. And how can you have a claim? How can you have damage when the goods haven't been even disposed of? They didn't go down at sea. Young Brothers disposed of the goods over here. What was your theory of your action, your complaint? Tort. Conversion. In common law, they used to say, well, you can waive the tort and sue in a sumpsit. True. Now, a tort in common law, you had to bring an action on the case for negligence or something. But you could waive that and sue if you had a contract. You could waive that and sue in a sumpsit or place that contract. Now, I feel like I'm back in law school looking at a bar exam question because I can't find out what your theory is. I've never believed you could waive the contract and sue in tort. That's the flip side of waiving the tort and suing an assumption. But it looks like you're trying to waive the contract and sue in tort and get a longer statute of limitations than you had under the contract. If if you had a contract, actually, if you read paragraph 12, excuse me, 20 of the complaint, which is on E.R. 10, you will see that thereby the word sometime after December 15, without notice, defendants sold a plaintiff's goods. That time, we thought they sold them, thereby converting said goods and depriving them of their property interest. OK, well, that's a conversion case like Trover, doesn't it? It's a truck. You're right. And you can go alternative theories. You know, we've known that for what? Forty years now. What? Gosh, maybe 50. You chose Trover. And then then that does that eliminate the agreement that you had that caused this whole thing to start? Absolutely. Absolutely. That's why it was filed in state court. It's a tort case. And then Judge Kern said, oh, no, this is a contract case. And you can't do that. The plaintiff is the master of his own complaint. You can't have the court saying, you know, you really sued on contract. He didn't sue on contract. M2. This is a tort case. M2. I say M2. That's abbreviation. Millennium 2 is a corporation. It owned the golf, the patented golf sets. There were 20 of them, at least according to the to the record on appeal. They were in that container. And those were owned by Millennium 2. Now, Millennium 2 is not a party to this contract. Sherrod Moore is. So people who own the product of the property that was converted aren't all here yet. No, you misunderstood me, Your Honor. I'm sorry. Millennium 2 is a party plaintiff. It's a party. It's the plaintiff. It is one of them. Oh, the caption says Sherrod F. Moore and the Millennium 2 Inc. Millennium 2 Inc. All the goods. There's one of the adults. Yeah. It's not at all. There is no at all in this case. You must be looking at another caption. This case is Sherrod F. Moore and Millennium 2 Inc. against Young Brothers. Millennium 2 owned the golf sets, the patented golf sets. There's a number of cases we haven't so held, but there's a number of courts that have held that there's complete preemption under COGSA, that COGSA contract requires being heard in federal courts. At least one court has held that the Harder Act also has that effect of complete preemption. Why doesn't this case, even though you styled the action as a tort action, so inherently raise a COGSA and or Harder Act claim that there's complete preemption and it has to be heard in federal court? I don't understand your question, Judge Ikuta. For example, in Beneficial case, the Supreme Court said there is no state court suit for usury against a national bank. It has to be heard in federal court. And some courts have said same thing with COGSA. Where there's a COGSA contract, it has to be heard in federal court. Well, that may be true, but this is not a COGSA case. In fact, the district judge said this is not a COGSA case. This is not that you can't have COGSA does not apply in intra state commerce. You know, this is just like going from Seattle to Vashon Island on the ferry, isn't it? I didn't hear the first part. Well, it's shipping this box of goods from one county to another in Hawaii is the same as shipping a piano from Seattle to Vashon Island. I don't know where Vashon Island. Well, it's in Puget Sound. Puget Sound is like Hawaii. You got a lot of counties that know that where traffic goes by boat. Yeah, but that's in between two different states. No, they're all the same state. They're all they're all Puget Sound is all in the state of Washington. You go all the way up to Friday Harbor and you're on one island after another for days on end. I think that's where it's all within the state of Washington. OK. And the Harder Act applies. That's true. And the Harder Act has no statute of limitations. So you've got to look to the state one. So the statement says if you've got a conversion case, you've got two or six years. You don't have one year. We've got the preliminary question here is whether the federal court had jurisdiction, whether you're going to go back to Hawaii state court. All right. So if the case arises under the Harder Act, we it's not our concern right now which statute of limitations necessarily applies. We've got to get federal court jurisdiction before we even get there. Right. True. OK. So there can be concurrent jurisdiction over either COGSA or Harder Act claim. I don't think there's you can bring those claims in state court, I suppose. But there's also federal jurisdiction. So is your position that the federal district court had no business dealing with this case and it ought to go back to Hawaii state court? I think so. And your reason is? That it was not removable because the current conversion occurred on the shore of Honolulu back at Young Brothers Dock right out here. OK. If someone were to disagree that that is the only thing that happened, if someone were to believe that the bill of lading actually established and controlled the relationship between the parties, does your position continue to be that it should go back to Hawaii state court? Yes. Because? Because it's not removable. Because? Because the UCC applies. And this case did not. Judge Curran decided this case on the statute of limitations. See, you got to have jurisdiction first. That's true. Now, I don't remember right now whether it was contested. It wasn't contested initially because I didn't do the research. Now, in retrospect, it looks to me like federal court did not have the power to remove this case. So you didn't move for a remand. Is that correct? That's correct. Correct. I didn't I didn't know. But I think I think it was raised in the. Yes, it must have been raised in the opposition to the motion for summary judgment. If you don't have any other questions, I'd like to reserve. Surely. Whatever time I have four minutes and see what I can do. OK. Thank you. Thank you very much. Stand up again. Morning, your honors. Mark Hamilton for the appellee cross appellant. Young Brothers Limited. I think Judge Reimer got to the heart of the jurisdiction issue with her first question. This is a situation where when the appellant signed the bill of laden to ship his goods from one island to another, he was aware that he was signing a contract. If you look at the complaint, paragraph six, which I believe the judge was quoting, it's on page eight of the excerpts of the record. It says, and I quote, defendant transported the goods to the Big Island of Hawaii, but did not deliver them to the plaintiffs in Hilo, Hawaii, as the parties agreed. But that's not his cause of action, right? He's he's talking about a breach of the duty of care under the UCC, under the state version of the UCC. I mean, that's just part of his his facts, right? I believe this is part of his complaint. Judge Akuda. He's he's he's stating that that the particular reason why this he was damaged was because of the failure of delivery. And in this case, delivery was provided for by a bill laden that incorporated CONSA. Now, as the court has pointed out, this would normally be a situation where the Art Carter Act would apply because it is between ports in the United States. But getting back to the complaint. So you interpret the complaint as raising a breach of contract claim. I interpret the complaint as as part of the complaint, raising a breach of contract claim. I'm saying this because the remedy for any kind of damage suffered from the failure to delivery was provided for in the bill of laden. Right. But that's your defense, right? I'm trying to find why it is we have subject matter jurisdiction. So if he's raising a tort claim only and it's not over navigable water, then we don't. It's not it's not a maritime tort. Well, I believe I see where you're headed with this. First of all, we have we have a we have a contract for maritime carriage that would fall within admiralty jurisdiction on its own merits. Right. But unless he's raising that as part of his well pleaded complaint. You know, that's just your defense. Well, I contract defense. I believe the well completed complaint rule is such that he can't leave out something that would pertain to his ultimate complaint by artful pleading. And that's the situation I believe we have here. Why is it essential to his complaint? He says the contract was over and the court said as of October 1st, constructively, it was delivered. And so his issue is, well, but then the goods were in a warehouse and were sold by your client. So it was after the contract was over for what the district court found. So why is the contract essential? Well, the contract is essential because the incorporation of COGSA. Also, there was an incorporation within this that stated the carrier was responsible for the, you know, had COGSA applied throughout the period before loading and after discharge. So any time young brothers had custody of these goods, the COGSA exceptions applied, the COGSA provisions applied. So it applied through. So according to the contract, it applies all the way through to the time when he's claiming that there was a conversion here. And we've got several court cases that that that support that. I believe, you know, Moriseki by this court in particular said that it was reasonable to extend in these circumstances to before loading and after discharge. And I think we've got, you know, at least a strong indication within the complaint itself that that is that is what he's complaining about. The fact that that not only was this not delivered, but we have a situation where the bill of laden, which is also a tariff, a tariff enacted under the state laws that applies that this actually carries out throughout the entire time. Custody was, you know, the control of custody was within with young brothers. There's one point I'd like to make in that regard. Following up, perhaps, is that this court has said that federal tariffs actually have the force of law and that they're similarly in the Hawaii Supreme Court, a case Baltazar versus Verizon Hawaii. That's the Supreme Court said that Hawaii tariffs like the tariff here also have the force of law and that notice of the terms are imputed to the consumer. So, in other words, in this case, appellant was aware that he has this contractual duty and that contractually throughout the entire time of the contract. COGSA is applicable here. And again, the one year statute of limitations is applicable here as well. Mr. Gershel says it's the case was not removable and you removed it on the grounds that it was a federal question because of the move on a harder actor on COGSA. We removed under both under both your honor. We we we felt that as as taking the precedent set by sealant services, that this was a situation where the harder act would normally apply, but because COGSA had been incorporated, those provisions would take precedent. And I believe we've said that this court actually said that in sealant services. And the Fifth Circuit has also said that in Sabah shipyard. So I think we have plenty of precedent along that line. It's sort of like the dormant commerce clause, I guess. It's there's a dormant COGSA out there now because it was saved by the harder. Well, there's always been a little bit of of of, I guess, discussion between the two acts trying to determine exactly where one starts and ends and the other begins. But I think we've seen enough precedent here that we've got, you know, from several courts saying that harder would apply between domestic for shipment between domestic ports. But when you've incorporated COGSA, then those provisions have the force of law. Any other questions along this line? If this were to go forward in state court, the state court could and presumably would enforce the contractual limitations. Is that right? I believe so. I believe so, because I think I think the bottom line here is that we have a contract. But I also think foundationally, we have federal jurisdiction here. And I think we have that established by both the harder act. And in this case, COGSA and by general admiralty jurisdiction here. This is obviously a maritime contract. I don't think anyone contemplated that this contract would not be dealing with the carriage of goods by sea. So we have admiralty jurisdiction, basic admiralty jurisdiction here, as well as the harder act applying. And because of the incorporation, COGSA applying as well. Do you agree it's not a maritime tort? Assuming we disagree that he raises, that Mr. Moore raises a contract claim and is only raising a tort claim at this point. Is it a maritime tort? That's an interesting issue. In terms of contract, I don't think we have any dispute that it would be a maritime contract throughout the entire terms, even up until when he's claiming there was a conversion issue here. But I don't really see this as a tort claim at all. I see this as a problem with a failure to deliver. And I think that's what we can read into his complaint here. So could you just answer my question? You agree that it's not a maritime tort? He's alleging it's conversion and that the incident relates only to the placement of the goods on the in the warehouse and then the conversion of them. So assuming that we disregard the contract elements, assuming that we don't find that he in fact is raising a contract claim. I'm not sure. I'm not sure. Whitcomb is a case in which the damaged or lost. I forgot what happened. Anyway, the property problem with the property occurred while it was in custody of Steve Adore, a terminal operator who was separate and independent from the shipper. Does that make any difference? I mean, here I take it that the theory is that Young was for one purpose a carrier and shipper and then sort of at some point became a terminal operator or a warehouse man. Can you shed any light on when that happens or whether it happens or what happens when it does happen? Well, I don't I don't believe at any point in time did Young Brothers actually stop being a carrier. It was never a warehouser. The problem being that it's puts the container in his container yard, which is still which as of October 1st was basically delivered. You know, he had both notice and opportunity inspecting as at a time. I think part of your question goes to to Cox and Cox's provision 1307, which allows to extend, which is Cork affirmed in more. He's saying that you can extend this to third parties if need be. So Steve Adore's would be included if that was included in in the bill of laden. In this case, Young Brothers kept kept authority to apply Cogs throughout the time of its custody of these goods. There's also the claim that in this that that we shipped it earlier. And if you look at that part of the claim that we shipped it too early, if you look at the bill of laden itself, there's a charge there for shipment. There's no charge for warehousing the goods for two months before it's supposed to ship. And I can't imagine any business actually giving away warehousing for two months for free. So if you look at through the whole process of the record here, I don't think there's a time when Young Brothers actually functions as a warehouser. It's always a carrier. If you look at even the definition of demerge, demerge is until they pick it up. And so in this case, we've never had we had the opportunity had notice agreed. He actually agreed to come pick it up on October 1st and never did so. No further questions. So thank you very much. Thank you, Mr. Yes. There's a case in the reply. It's called Manasman on reply page two. And I think that answers some of the questions that were asked about the use of whether the harder or the. I think that's the case. The issue of incorporation of COGS on the backside of that bill of lading involves unconscionability. And I don't want to waive by not talking about that. I don't want to waive that argument at all. But that print is about what, two millimeters high. And even if Sherrod Moore had read the backside of that, I don't believe that a reasonable person shipping goods would understand the significance of COGS and the tariff that says is incorporated, too. So there's that's a factual issue, too. And so summary judgment was inappropriate. And that unconscionability argument has made an opening brief 20. The last thing is that I want to make a point about is that young brothers must have known that the UCC applied because the letters that they purported to send to Sherrod Moore and his address in Honolulu has a citation to the UCC and what they're going to do to give him notice of how we're going to dispose of your goods. Now, they even had the wrong address on that. They had the wrong they had the wrong street. They put Kamehameha. That's not Kamehameha. And they also had his address over in Hilo. Now, they knew he moved from Honolulu to Hilo. So why are they sending the notice over to Honolulu? And it didn't get there. So they violated their own citation of the UCC. So they must have thought UCC applied. Therefore, by their conduct, it does apply. That parties, by their own conduct, then have given this court the authority to apply the UCC. So please reverse this case, send it back to the trial court and perhaps even tell tell the trial court this has got to go back to the state court. And thank you again very much. If you have any further questions. OK. OK. I think. Thank you, counsel. The matter just argued that will be submitted.
judges: Goodwin, Rymer, Ikuta